IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRENDA L. BOWERS, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 10-622-RGA |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security, | : | |
| Defendant. | : | |

Stephen A. Hampton, Esq., Dover, DE, Attorney for Plaintiff.

Charles M. Oberly, III, United States Attorney, Wilmington, DE; Patricia A. Stewart, Special Assistant United States Attorney, Philadelphia, PA, Attorneys for Defendant.

MEMORANDUM OPINION

August 2, 2012

ANDREWS, U.S. DISTRICT JUDGE:

Plaintiff Brenda L. Bowers, referred to in the record as Brenda Lynn Hamilton, appeals the decision of Defendant Michael J. Astrue, the Commissioner of Social Security, denying her application for supplemental security income under Title XVI of the Social Security Act. Pending before the Court are the parties' cross-motions for summary judgment. (D.I. 14, 15, 16, 17, 18). The Court grants Plaintiff's motion in part and denies it in part, and denies Defendant's motion. This matter is remanded for the ALJ to consider: 1) the non-examining State Agency opinions, and the residual functional capacity and hypothetical question to the extent they rely upon those opinions; 2) the opinion of Drs. Morris and Lifrak; 3) Plaintiff's mother's statement; 4) the record surrounding Plaintiff's alleged absenteeism from recovery from three abdominal surgeries within a twelve month period, incontinence, and mental decompensation; 5) whether Plaintiff's depression comprises a listed impairment; and 6) whether sufficient jobs that Plaintiff can perform exist in the national economy.

**BACKGROUND**

Plaintiff first filed her application for SSI on July 3, 2007, alleging disability as of April 6, 2006. (Tr. 143). That claim was denied initially and upon reconsideration. (Tr. 75-80, 84-89). After a requested hearing, at which Plaintiff was represented by an attorney and at which Plaintiff and a vocational expert testified, an administrative law judge ("ALJ") issued a decision denying benefits. (Tr. 10-19). The Appeals Council denied Plaintiff's request for review. (Tr. 1-4). Plaintiff filed an appeal to this Court.

Plaintiff was born in 1966, and was forty when she filed for SSI. (Tr. 18). She completed

2

the twelfth grade, and worked deboning chickens from 1987-1996, and sorted clothes at a dry cleaner from 2000-2001. (Tr. 148, 153). Plaintiff claimed she became disabled on April 6, 2006, and alleges diverticulitis and bipolar disorder. (Tr. 75, 147).

## A. Disability Determination Process

Title XVI of the Social Security Act provides for the payment of disability benefits to indigent persons under the SSI program. 42 U.S.C. § 1382(a). A "disability" is defined for purposes of SSI as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *Barnhart v. Thomas*, 540 U.S. 20, 21–22 (2003).

In determining whether a person is disabled, the Commissioner is required to perform the five-step sequential analysis set forth at 20 C.F.R. § 404.1520. *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999). If a finding of disability or non-disability can be made at any point in the sequential process, the Commissioner should not review the claim further. 20 C.F.R. § 404.1520(a)(4).

## B. The ALJ's Decision

The ALJ rejected Plaintiff's claim for SSI on October 28, 2009, using the five-step sequential analysis. (Tr. 10-19). The ALJ found Plaintiff had not engaged in substantial gainful

3

activity since July 3, 2007, Plaintiff's application date. (Tr. 12). Second, the ALJ concluded that

Plaintiff's status after several abominal surgical procedures (hemicolectomy, colostomy, reversal

of the colostomy, hernia repair, and hysterectomy), borderline intellectual functioning, and

depression, not otherwise specified, were severe impairments. *Id.* The ALJ concluded that

Plaintiff's headaches, asthmatic bronchitis, and back pain were nonsevere impairments. (Tr. 12-

13). In the third step, the ALJ concluded that Plaintiff did not have a match to the list of

impairments. (Tr. 13). In the fourth step, the ALJ concluded that Plaintiff was not able to

perform past relevant work. (Tr. 18).

Finally, in the fifth step, the ALJ concluded that Plaintiff could perform light work,

limited to simple unskilled work requiring production quotas, essentially isolated with only

occasional supervision, and low stress, defined as having only occasional changes in the work

setting. (Tr. 14). Plaintiff was also restricted from climbing ladders, rope, or scaffolds, or other

work at heights, and operating dangerous machinery. *Id.*

In making this conclusion, the ALJ interpreted the state examining psychologist's opinion

to be stating Plaintiff "was capable of simple, unskilled work" and gave that opinion

"considerable weight." (Tr. 17). The ALJ also gave "great weight" to the State Agency

opinions, which the ALJ summarized as stating Plaintiff was "capable of light work and simple

tasks." (Tr. 17-18, 545-550, 590). The ALJ presented a hypothetical to the vocational expert as

follows:

Q. All right. And we will consider a hypothetical person who is about the
claimant's stated age and onset would be about 39 years. This individual has a
high school education, is able to read, write and do at least simple math, add
subtract, that type of thing, handle money. There are certain underlying
impairments that place limitations on the ability to do work-related activities.

4

We'll start at a light level of exertion. The posturals are all occasional, but there should be no climbing of a ladder, a rope or a scaffold. This individual should avoid concentrated exposure to heights, heights being defined as moving machinery and heights and this individual should avoid concentrated exposure to odors, dust, gasses, poor ventilation. This person would require simple, unskilled work nonexertionally. Also would require work that would not be at a production pace, demand needs paid by the piece, so working at an assembly line, work that would have – be essentially isolated with only occasional supervision and low stress work defined as only occasional changes in the work setting. Would in your opinion such a person be able to do the claimant's past relevant work with that hypothetical?

A. I would say no.

Q. No. All right. Would there be in your opinion any simple, unskilled work such a person could do in the national or regional economy?

(Tr. 61-62). The vocational expert proceeded to identify possible jobs that the hypothetical person could perform, and the ALJ concluded that jobs Plaintiff could perform exist in significant numbers in the national economy. (Tr. 18-19, 62-63).

## DISCUSSION

### A. Standard of Review

The Court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). "Substantial evidence" means less than a preponderance of the evidence but more than a mere scintilla of evidence. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record. *See Monsour*, 806 F.2d at 1190. The Court's review is limited to the evidence that was actually presented to the ALJ. *See Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001). "Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence." *Pysher v. Apfel*, 2001 WL 793305, at *3 (E.D.Pa. July 11, 2001).

The Third Circuit has explained that a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence-particularly certain types of evidence (e.g., evidence offered by treating physicians)-or if it really constitutes not evidence but mere conclusion." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). Even if the reviewing court would have decided the case differently, it must defer to the ALJ and affirm the Commissioner's decision if it is supported by substantial evidence. *See Monsour*, 806 F.2d at 1190-91.

## B. Analysis

*1. The ALJ erred in applying the non-examining State Agency opinions, such that the ALJ's residual functional capacity and hypothetical question are not supported by substantial evidence.*

The ALJ gave "great weight" to the State Agency opinions, which the ALJ summarized as stating Plaintiff was "capable of light work and simple tasks." (Tr. 17-18, 545-550, 590). Dr. Kataria opined that Plaintiff could sit for about six hours in an eight hour work day, and stand and/or walk for at least 2; that Plaintiff could occasionally lift 20 pounds and frequently lift 10

6

pounds; and recommended a sedentary RFC. (Tr. 546-47). Dr. Borek also noted a sedentary

maximum RFC. (Tr. 590). Plaintiff argues the ALJ erred because the State Agency opinions

found Plaintiff capable of sedentary work, not light work, and that this error tainted the ALJ's

residual functional capacity assessment. In response, Defendant points to 20 C.F.R. § 416.967(b)

to argue that light work permits "sitting most of the time" under "reduced" light work; Defendant

does not address the opinions' conclusions of sedentary work.

The ALJ erred by characterizing the State Agency opinions as "stating the claimant was

capable of light work" without explaining why she rejected the opinions' express conclusions of

"sedentary." The ALJ makes no mention of their contradictory conclusions, leaving the Court to

wonder whether the ALJ considered and rejected them, considered and discounted them, or failed

to consider them at all. *See Fargnoli v. Massanari*, 247 F.3d 34, 43-44 (3d Cir. 2001). This

error is made more serious by the fact that the ALJ gave these opinions "great weight" in

determining the residual functional capacity assessment. The ALJ's characterization of the State

Agency opinions was unsupported, making the ALJ's conclusion of Plaintiff's residual

functional capacity not supported by substantial evidence. This matter is remanded for the ALJ

to reconsider Plaintiff's residual functional capacity. The Court need not reach Plaintiff's other

arguments for remand that depend on the ALJ's consideration of the State Agency opinions.

Plaintiff argues that the ALJ's errors in applying the State Agency opinions also carried

over into the ALJ's hypothetical, as the ALJ did not include the State Agency restrictions on

7

standing and walking, or their sedentary RFC conclusions.[1]  The ALJ did not include the State

Agency restrictions - that Plaintiff could sit for about six hours in an eight hour work day, and

stand and/or walk for at least two - in the hypothetical. (Tr. 61-62). The ALJ's hypothetical

"light level of exertion" does not encompass these restrictions. When an ALJ accepts the opinion

of the non-examining State Agency physician, the ALJ is required to include the functional

limitations identified by that source in the RFC finding and hypothetical question. *Ramirez v.

Barnhart*, 372 F.3d 546, 552 (3d Cir. 2004). The remand for more thorough consideration of the

State Agency opinions and Plaintiff's RFC also encompasses the hypothetical posed to the

vocational expert.

### 2. *The ALJ's hypothetical properly addressed Dr. Watson's limitations and precluded work with heights and machinery.*

Plaintiff's concerns about the ALJ's hypothetical extend to the opinion of Dr. Kimberly

Watson, who consultatively examined Plaintiff. The ALJ gave "considerable weight" to Dr.

Watson's opinion. (Tr. 15, 17, 557-58). Plaintiff first argues the ALJ erred in concluding "Dr.

Watson stated the claimant was capable of simple, unskilled work" when Dr. Watson indicated

Plaintiff had moderately severe limitations in several categories, including her ability to relate to

others, sustain work in a normal setting, cope with ordinary work pressures, and perform routine,

repetitive tasks under ordinary supervision. (Tr. 17, 557-58). The vocational expert answered

that those moderately severe limitations would preclude work. (Tr. 64). In the same vein,

---

[1] The Court interprets Plaintiff's issues with the hypothetical question to bear on the fifth step of the disability analysis, *i.e.*, whether there are jobs existing in significant numbers which the claimant can perform, as determined with the vocational expert's assistance. *See Plummer*, 186 F.3d at 428; (Tr. 61-63). The hypothetical question also informs the ALJ's conclusion that Plaintiff is unable to perform any past relevant work - a conclusion in Plaintiff's favor, which Plaintiff does not assert is not supported by substantial evidence. (Tr. 18, 61-62).

Plaintiff argues that because the ALJ gave Dr. Watson's opinion "considerable weight," the ALJ was required to adopt Dr. Watson's opinion in full, and to present it in detailed entirety in the hypothetical to the vocational expert, in order for the vocational expert's testimony to provide substantial evidence to support the ALJ's decision. Plaintiff also presents this argument in the context of the ALJ substituting her own judgment for that of Dr. Watson.

In fact, the ALJ's RFC of "light work" was limited to simple, unskilled work that did not require production quotas; isolated work, with only occasional supervision; and work involving only an occasional change in the work setting. (Tr. 14). There is no indication that the ALJ rejected Dr. Watson's limitations.[2] The vocational expert's testimony that Dr. Watson's limitations preclude "work" does not necessarily preclude *all* work. This testimony is not necessarily inconsistent with the vocational expert's proposed jobs that fit the ALJ's limited hypothetical; Dr. Watson's limitations and the ALJ's hypothetical limitations both preclude certain types of work. (*See* Tr. 64).

Finally, Plaintiff argues the hypothetical question did not include the preclusion of exposure to heights and dangerous machinery in the ALJ's residual functional capacity finding. In fact, the hypothetical addressed an individual who "should avoid concentrated exposure to heights, heights being defined as moving machinery and heights." (Tr. 61).

---

[2] Plaintiff's reading of Dr. Watson's notation of a "moderately severe" impairment in "perform[ing] routine, repetitive tasks under ordinary supervision" to mean Dr. Watson indicated Plaintiff would need *more* than ordinary supervision is too narrow. (*See* Tr. 558). Dr. Watson's notation means, simply, that Plaintiff cannot function under ordinary supervision. The ALJ's conclusion that Plaintiff could tolerate only *occasional* supervision is consistent with this broader reading.

9

*3. The ALJ erred in rejecting the opinion of Dr. Morris, Plaintiff's treating physician, and discrediting the examining opinion of Dr. Lifrak, but not in accepting the opinion of Dr. Clements.*

Plaintiff argues the ALJ substituted her own judgment for that of the medical experts. In addition to the issues pertaining to Dr. Watson and the State Agency examiners, discussed *supra*, Plaintiff argues the ALJ's consideration of the opinions of Drs. Clements, Lifrak, and Morris were also improper.

Dr. Morris, Plaintiff's primary care provider, noted in 2009 that Plaintiff was "currently disabled and unable to do any work." (Tr. 708). The ALJ noted, "Dr. Morris stated the claimant was disabled. The undersigned gives little weight to this opinion because it is not supported by the treatment records and the physical findings in the record." (Tr. 17). Plaintiff argues the ALJ rejected this treating opinion based solely on the ALJ's own lay judgment. Defendant responds only that "the opinion of disability is reserved to the Commissioner," and does not attempt to justify the ALJ's rejection of Dr. Morris' opinion. (D.I. 17 at 15).

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). Moreover, a treating source's opinion on the nature and severity of a claimant's impairment will be given controlling weight where it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence on record. *Fargnoli*, 247 F.3d at 43. The ALJ must consider medical findings supporting the treating physician's opinion that the claimant is disabled. *Morales*, 225 F.3d at 317. If the ALJ rejects the treating physician's assessment, he may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of

10

contradictory medical evidence." *Plummer*, 186 F.3d at 429. If an ALJ chooses not to give a treating physician's opinion controlling weight, he must look at factors that include (1) examining relationship; (2)(i) length and frequency of treatment; (2)(ii) nature and extent of the treatment relationship; (3) degree to which the evidence supports the opinion; (4) consistency of the record as a whole; (5) specialization of the physician; and (6) other factors. *See* 20 C.F.R. § 404.1527(d).

The ALJ did not engage in any of this inquiry in rejecting Dr. Morris' treating opinion that Plaintiff was disabled. While the Court is mindful that the ALJ is responsible for the determination of statutory disability, 20 C.F.R. § 416.927(d), the ALJ must still evaluate the treating opinion properly. This matter is remanded for the ALJ to reevaluate Dr. Morris' opinion.

Dr. Lifrak consultatively examined Plaintiff in 2008. (Tr. 15, 536-44). The ALJ recited Dr. Lifrak's physical findings and concluded Dr. Lifrak "stated the claimant was limited to sedentary work, but his physical examination does not support this degree of limitation. He based his opinion, in part, on the claimant's subjective complaints and limitations, and these were not supported in the objective medical evidence. The undersigned gives little weight to this opinion." (Tr. 15, 17). Plaintiff argues the ALJ rejected this opinion based solely on her own lay judgment. Defendant only repeats the ALJ's explanation. (D.I. 17 at 15). The Court finds the ALJ's decision to discredit Dr. Lifrak's opinion is not supported, because the ALJ does not specify the medical evidence that allegedly contradicts Dr. Lifrak's opinion. The decision to discredit an opinion that is based on actual examination must be supported by more than mere conclusory statements. *Brownawell v. Commissioner*, 554 F.3d 352, 356-57 (3d Cir. 2008). The matter is remanded for the ALJ to reconsider Dr. Lifrak's opinion.

Dr. Clements treated Plaintiff in the spring and summer of 2006, winter of 2007, and winter of 2008. (Tr. 12, 14). In April 2006, Dr. Clements wrote that Plaintiff was "under my care for a surgical illness that will require about 6 months to recover. I feel she may qualify for disability at least temporarily." (Tr. 230). The ALJ noted that "Dr. Clements stated the claimant was only temporarily disabled for six months" and "accept[ed] this opinion, but six months of disability does not qualify the claimant for benefits." (Tr. 14). Plaintiff argues the ALJ was wrong because Dr. Clements' opinion dated from 2006 and preceded Plaintiff's additional surgeries. (D.I. 15, at 12 n.3). The Court finds the ALJ's interpretation of Dr. Clements' opinion is supported, particularly in light of Dr. Clements' opinion four months later that Plaintiff's surgery was successful and she needed only to avoid heavy lifting and driving for a few days. (Tr. 304).

### 4. The ALJ erred by failing to address Plaintiff's mother's statement.

Plaintiff argues the ALJ erred by prohibiting Plaintiff's mother from testifying on the grounds that the ALJ had no notice of the witness (Tr. 60), when Plaintiff submitted such notice (Tr. 114-15). Plaintiff further argues the ALJ erred by not referencing Plaintiff's mother's statement submitted in lieu of testimony. (Tr. 60, 66, 228-29). In response, Defendant points to the ALJ's reference to her "careful consideration of all the evidence." (Tr. 17; D.I. 17 at 18). This sentence does not show that the ALJ considered Plaintiff's mother's statement as she is required to do. *See Burnett v. Commissioner*, 220 F.3d 112, 122 (3d Cir. 2000). The matter is remanded for the ALJ to consider Plaintiff's mother's statement.

12

*5. The ALJ failed to develop the record regarding Plaintiff's incontinence, mental decompensation, and recovery time.*

Plaintiff argues the ALJ erred by failing to properly develop the record regarding Plaintiff's incontinence, mental decompensation, and educational background. Defendant responds that the evidence does not support Plaintiff's allegation of incontinence; that the ALJ noted the paucity of records from Plaintiff's mental health episodes (Tr. 15); and that the ALJ's characterization of Plaintiff's educational background was consistent with Plaintiff's testimony.

Plaintiff also argues the ALJ erred by not considering the possibility that Plaintiff was disabled for the twelve month period in which Plaintiff had three abdominal surgeries, as the vocational expert testified that the absences caused by such surgeries would preclude entry level work. (Tr. 66). In response, Defendant argues Plaintiff's surgeries were "discrete events" and that the record shows she recovered from each surgery and does not support the degree of absenteeism underlying the vocational expert's testimony. (D.I. 17 at 16-17).

It is the ALJ's responsibility to "investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110 (2000). There is no indication the ALJ considered Plaintiff's alleged incontinence (*see* Tr. 44-45, 63-64, 228, 607, 756) or admission for inpatient mental health treatment (*see* Tr. 872-84), and in fact it appears the ALJ failed to obtain additional records of Plaintiff's mental health admission (*see* Tr. 15).[3] The ALJ's

_____

[3] Plaintiff argues generally that benefits are warranted based on opinion evidence and the Agency decision to award Plaintiff benefits in a subsequent case. Plaintiff argues that the subsequent Agency decision is based on the evidence before the ALJ here and the additional mental health records the ALJ failed to obtain. (D.I. 15 at 16; D.I. 15-1 at 5). The remands for the ALJ to reconsider the evidence before her and develop the record as to Plaintiff's mental health treatment mean the Court does not need to reach this argument. The Court notes that it is possible that the records from Plaintiff's October 2009 hospitalization were not available as of the October 28, 2009 decision in this case, such that remand for consideration of those additional

13

conclusion that Plaintiff had no episodes of decompensation is therefore not supported by substantial evidence. (Tr. 13-14). The matter is remanded for the ALJ to develop the record as to Plaintiff's incontinence and admission for inpatient mental health treatment.

The ALJ also failed to consider the effects of Plaintiff's recovery time during the twelve month period in which she had three surgeries. As Plaintiff points out, the ALJ only considered Plaintiff's status post-abdominal surgical procedures (which the ALJ found was a severe impairment) as of the date of the ALJ's opinion. Defendant responds that Plaintiff's surgeries were discrete events, each with an appropriate amount of recovery, based on Defendant's own review of the record. (D.I. 17 at 16-17). Because this argument is based on Defendant's own review of the record, not the ALJ's, it cannot salvage the ALJ's oversight. *See SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."). The matter is remanded for the ALJ to consider Plaintiff's cumulative absenteeism from her surgeries.

*6. The ALJ's conclusion that Plaintiff's depression did not match a listed impairment is not supported by substantial evidence.*

Plaintiff argues the ALJ erred in finding Plaintiff's depression did not match any listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1, because Plaintiff did not have a "marked" limitation in two of four functional areas, including (1) daily living, (2) social functioning, (3) concentration, persistence, or pace, or (4) decompensation. (D.I. 15 at 15; Tr. 13). Plaintiff notes Dr. Watson, the State Agency examining psychologist, found Plaintiff's

_____

records would also be appropriate under *Szubak v. Sec'y of Health and Human Serv's*, 745 F.2d 831, 833 (3d Cir. 1984).

14

depression created "moderately severe" limitations in relating to other people, daily activities,

personal habits, and interests, *inter alia*. (Tr. 13, 557-58). The ALJ gave Dr. Watson's opinion

"considerable weight." (Tr. 17). Defendant responds, without citing any law, that Dr. Watson's

findings were on the wrong form, and therefore do not directly correlate to the statutory listings.

(D.I. 17 at 20). Plaintiff properly points out that Dr. Watson's form parallels the requirements

for marked statutory restrictions. On Dr. Watson's form, "moderately severe" falls between

"moderate" and "severe." (Tr. 557). The ALJ noted that "[a] marked limitation means more

than moderate but less than extreme." (Tr. 13) The ALJ did not address Dr. Watson's

"moderately severe" limitations at all in determining whether Plaintiff's depression comprised a

listed impairment. The ALJ's decision that Plaintiff's depression did not match any listed

impairments is not supported by substantial evidence, and is remanded.

*7. The ALJ's statement about Plaintiff's education level is supported by substantial*
*evidence, but the conclusion that sufficient jobs exist in the national economy is not.*

The ALJ's conclusion that the Plaintiff had a high school education is supported by

substantial evidence. (Tr. 18, 61). Plaintiff testified she completed the twelfth grade, albeit with

a certificate and via a special education track, and could read, write a grocery list, do simple

math, and handle cash. (Tr. 29-31). In any case, the ALJ found Plaintiff's "borderline

intellectual functioning" to be a severe impairment. (Tr. 12).

Plaintiff also argues the ALJ failed to reconcile the limitation against production pace or

assembly line work with the vocational expert's identification of packing, assembly, and

inspecting jobs, and the limitation of low stress work with the vocational expert's identified

security jobs. In response, Defendant simply notes the vocational expert identified packer,

inspector, and unarmed security guard as jobs that involve low stress and no production work.

15

(Tr. 61-62). The Court agrees that the ALJ limited Plaintiff from production or assembly line work, yet accepted the vocational expert's proffered packer and inspector jobs, which on their face appear to include such work. The ALJ's conclusion that sufficient jobs exist for Plaintiff in the national economy is not supported by substantial evidence, and is remanded; the Court need not reach the issue of whether an unarmed security guard job is "low stress."

An order consistent with this opinion will be issued.